**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**



| | |
|---|---|
| MARCELINE WHITE<br>**Plaintiff,** | |
| **v.** | |
| GREEN TREE SERVICING LLC<br>**Defendant** | Case No. |

---

**COMPLAINT**
**&**
**REQUEST FOR TRIAL BY JURY**

Case: 24-C-14-003761
CV File New
                                    $80.00
Appear Fee
                                    $30.00
MISC
                                    $55.00
TOTAL                               $165.00
RECEIPT #2014U0015060
Cashier: PMR CUBCX82
6/18/14    8:26am

Plaintiff Marceline White ("White"), by her attorneys, Phillip Robinson, Jesse Iliff, and CONSUMER LAW CENTER LLC, hereby file this Complaint against Defendant Green Tree Servicing, LLC ("Green Tree") and states as follows:

## I.   INTRODUCTION

1.      In these instances, such as the underlying matter involving Green Tree, the servicers place their interest above that of the homeowner and unfairly and deceptively ignore their statutory and contractual duties including those which were agreed to as part of their license to legally operate in the State of Maryland.

2.      These practices are compounded when homeowners, like White in this case, try in good faith to resolve the situation but the servicer, i.e Green Tree, fails to act in good faith and intends to ignore the serious and material issues and merely willfully blinds itself to the true status of the mortgage loan. After their reasonable efforts to

1



**EXHIBIT**

A

mitigate and resolve their mortgage situations are ignored, homeowners like the Plaintiff are left with no other option but to seek the assistance of the Courts.

3.      The subject practices involved in this action include: (i) Green Tree's utter failure to timely credit White's on-time and complete mortgage payments since it became her mortgage servicer; (ii) Green Tree's false and negative credit reporting of White's loan as in default status to various credit reporting agencies when her mortgage loan was actually current (and remains so as of the filing of this Complaint); (iii) Green Tree's improper demand for more monies than were actually due and owing as part of a payoff quote sought when White was attempting to refinance; (iv) Green Tree's inadequate responses to White's inquiries required under federal and state law; and (v) Green Tree's improper threats of foreclosure when White was and has been at all-times relevant in this Complaint, current on her mortgage obligation.

4.      Had Green Tree performed the basic services required of a Maryland mortgage servicer in timely collecting, posting, and crediting the payments made by White in the last year or even conducted a bona fide investigation when White requested it, White would not have suffered the damages and losses described herein that are the direct and proximate result of Green Tree's misrepresentations, misstatements, omissions, and unwise, unfair and deceptive acts.

5.      White's damages and losses proximately caused by Green Tree include: (i) the loss of an opportunity and benefit to refinance her current, interest only mortgage loan to fixed interest and principal loan offered by PNC Mortgage, a division of PNC Bank, NA ("PNC"); (ii) the improper assessment of late fees and other related charges to

2

her mortgage account which are not owed since White has timely made all her payments; (iii) costs incurred to investigate the issues and attempt to mitigate or otherwise resolve the issues without litigation and also incurred for the refinance transaction that was withdrawn by PNC on the eve of settlement; and (iv) significant emotional damages, with physical manifestations such as anxiety, stress, frustration, annoyance, anger, and fear, for her and her son who are being wrongfully threatened with foreclosure and prevented from being able to refinance to a safe loan for the long-term.

## II.    JURISDICTION AND VENUE

6.      This Court has jurisdiction asserted because Defendant transacts business and performs work, has interests in real property and provides services in Maryland and Baltimore City.

7.      Venue is appropriate in this district because the actions subject to this Complaint largely occurred in Baltimore City and the Defendant conducts business within Baltimore City directly and indirectly through its appointed agents.

## III.    PARTIES

8.      Plaintiff Marceline White ("White") is a resident of Baltimore City, Maryland.  She resides with her minor son at 1531 Park Avenue in Baltimore City, Maryland 21217 ("Property").

9.      Defendant Green Tree Servicing LLC ("Green Tree") is a non-bank, Delaware Corporation licensed as a Maryland mortgage lender (i.e. license number 06-19255).   Green Tree became the mortgage servicer for White's loan on June 1, 2013.

3

10.     Not named as defendant in this action, Bank of America, NA ("BANA") acted as the prior mortgage servicer of White's loan before Green Tree acquired its interest.

11.     Not named as a defendant in this action, Fannie Mae is the owner of White's loan.

## IV.     FACTS

### A.     THE FORECLOSURE & MORTGAGE CRISIS

12.     Over the last six years, Maryland and the United States have been in the midst of a foreclosure crisis. News reports have established that one in ten American homes is at risk of foreclosure. In response to this crisis and the factors that led to it, the Maryland General Assembly and the Maryland Governor have enacted and signed into law a number of new protections and requirements for so-called mortgage professionals and others involved in the mortgage lending process.

13.     The Court of Appeals has held that in light of these "public policy statements as exemplified by its recent enactments...a stricter adherence to the rules of procedure in mortgage foreclosure sales of residential property is required." *Maddox v. Cohn*, 424 Md. 379, 393, 36 A.3d 426, 434 (2012). The same strict adherence applies to certain mortgage origination practices subject to this action as well.

### B.     THE DEFENDANTS' LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION

14.     Under the Maryland common law, Green Tree owes the Plaintiff, as discussed infra, a duty of care due to the 'intimate nexus' which exists between the Plaintiff and the Defendant, a licensed real estate professional. This 'intimate nexus'

4

arises from the relationship between a lay customer like the Plaintiff and the licensed professional Defendant, characterized by the Plaintiff's reliance upon the accuracy of the professional's services to her. See 100 Investment Limited Partnership v. Columbia Town Center Title Co., 60 A.3d 1 (2013); Jacques v. First Nat'l Bank of Md., 307 Md. 527 (1986).

15.     As a licensed Maryland mortgage lender (¶ 9), Green Tree volunteered and agreed to accept as a condition of its license a "duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan" to include a duty to "promptly" provide borrowers with an accounting of their loan when requested and to have "trained" employees on staff to "promptly answer and respond to borrower inquiries."   Md. Code Regs. 09.03.06.20. White is a third party beneficiary of Green Tree's duty under Md. Code Regs. 09.03.06.20

16.     The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. Hoffman v. Stamper, 385 Md. 1, 867 A.2d 276 (2005).

**C.     BACKGROUND ON THE PLAINTIFF'S MORTGAGE SERVICED BY THE DEFENDANT**

17.     White acquired the Property with her former husband on November 14, 2001. As part of the couple's divorce she became the sole owner of the Property on

March 21, 2007 and White refinanced the Property for the sum of $309,300 to settle the divorce case on the same date with Countrywide Home Loans, Inc.

18.     White's March 21, 2007 mortgage note has an initial ten-year, interest only term fixed at a rate of 6.175%. In the first ten years of the loan, the only payments White has made and will continue to make will be for interest, unless she pays extra and applies the extra to her principal. However, since taking out her loan on March 21, 2007, the interest rates have dropped dramatically. After ten years of interest only payments, White's note will adjust every 12 months thereafter.

19.     Last year, the servicing rights to White's loan were transferred from BANA to Green Tree as of June 1, 2013. At the time of the transfer, White was current on her mortgage loan.

20.     As of January 25, 2014 BANA still reported to the credit reporting agencies that White was current on her mortgage loan through April 2013.

21.     Under the terms of White's mortgage note White is required to make her monthly mortgage payments by the first of the month but she has a grace period of 15 days before she will incur any late charge(s) or fees.

22.     Since June 1, 2013 through June 2014, White has made the following payments on her mortgage loan to Green Tree in reasonable reliance that Green Tree would correctly account for each payment and appropriately credit her mortgage account:

| Payment Month | Amount of Payment | Date Payment Received |
|---------------|-------------------|-----------------------|
| June 2013     | $2344.15          | May 30, 2013          |
| July 2013     | $2344.15          | July 2, 2013          |

| Payment Month | Amount of Payment | Date Payment Received |
|---|---|---|
| August 2013 | $2344.15 | July 30, 2013 |
| September 2013 | $2344.15 | August 29, 2013 |
| October 2013 | $2350.62 | October 1, 2013 |
| November 2013 | $2350.62 | November 1, 2013 |
| December 2013 | $2450.62 | November 29, 2013 |
| January 2014 | $2450.62 | December 31, 2013 |
| February 2014 | $2450.62 | January 28, 2014 |
| March 2014 | $2450.62 | March 4, 2014 |
| April 2014 | $2450.62 | April 2, 2014 |
| May 2014 | $2450.62 | May 1, 2014 |
| June 2014 | $2450.62 | May 23, 2014 |

23.     White made each of the payments described in the preceding paragraph by use of the wires through her on-line banking services provided by her bank—i.e. PNC— in reasonable reliance that Green Tree was able to properly accept payments by this method and apply them to her account timely and correctly.  Each of the payments described in the preceding paragraph were for the sum then due (or more than what was actually due) on White's loan for that monthly payment.

24.     In the Fall of 2013 (i.e. about October 20, 2013) White decided that she should attempt to refinance her mortgage loan into a sustainable mortgage loan that included principal and interest and was calculated at a then current market rate.   She

7

applied for a refinance loan with PNC and PNC prequalified her mortgage refinance application, in part, on her status as a current mortgage borrower with excellent credit. PNC requested as part of the transaction that White incur certain costs as a condition of her refinance and these costs were actually incurred by White:

|   |   |   |
|---|---|---|
| a. | Appraisal | $460.00 |
| b. | Application Fees | $15.05 |
| c. | Incurred Legal Expenses | $200.00 |
| d. | Mortgage Condition Requirements | $19,614.00 |

25.    PNC approved White for a 30-year fixed mortgage loan at the interest rate of 4.75%. White's monthly (principal and interest) payment under the proposed PNC loan would be $1,304.12 plus appropriate escrows (White also intended to pay down her mortgage balance by the sum of $65,062.78). The interest rate on the PNC approved loan would never increase and the monthly principal and interest payment would also never increase. Over the course of the PNC loan, White would have paid approximately $219,000 in interest.

26.    Since Green Tree's acts prevented White from refinancing she is obligated to pay at least $332,000 in interest on her current loan.[1] The economic benefit lost from White's refinance in terms of real savings is a sum of at least $113,000 (the difference between the lower amount she would have been obligated to pay to PNC if she refinanced and what she is obligated to pay to Green Tree.

---

[1] White's current loan will adjust in 2017 and it's possible she may be obligated to pay even more interest depending on index rate. However, pursuant to the terms of her Note she will never pay less than 6.175%.

27.     PNC memorialized these terms to White in a commitment letter to her dated October 23, 2014 which was subject to certain conditions including certain property improvements and White's withdrawal of certain disputes on her credit report concerning a furnisher other than Green Tree.  From October 23, 2013 through early January 2014, White fulfilled the conditions required by PNC.

28.     Having fulfilled her obligations required by PNC and incurred the expenses described herein to be able to refinance, PNC scheduled settlement to occur on or about January 29, 2014.  However, just days before the scheduled date, PNC reported to White that it would not approve her refinance due to the false reporting of Green Tree to various credit reporting agencies and others (as discussed *infra*).  Green Tree also was claiming as part of the pay-off of White's loan significant sums due.  For these reasons, a direct and proximate result of Green Tree's illegal actions, settlement did not proceed as planned.

29.     White would have saved at least $113,000 in interest payments over the life of her new loan if Green Tree had not unfairly interfered with her refinance transaction with PNC through is knowing misstatements, misrepresentations, omissions, or otherwise unfair and deceptive acts.

30.     As part of her refinance transaction with PNC, White through PNC requested a payoff statement from Green Tree so she could go to settlement with PNC.  On January 13, 2014 Green Tree wrote to White and provided a payoff statement.  However, Green Tree's January 13, 2014 payoff statement contained the following

9

knowing and willful misstatements and misrepresentations it intended White and PNC to rely upon:

    a. The statement falsely claimed that White owed a sum more than the original balance of the loan when in fact White was current and owed nothing more than the original balance of the loan.

    b. The statement falsely claimed that White owed $6,751.11 in interest on the loan when in fact she was current and owed no interest.

    c. The statement falsely claimed that White owed late fees in the sum of $154.78 when in fact White was and had been current on her mortgage loan throughout the period of time Green Tree had serviced her loan sum more than the original balance of the loan when in fact White was current and owed nothing more than the original balance of the loan.

31. Also on January 13, 2014 Green Tree sent a letter which knowingly and willfully misrepresented that White was behind on her mortgage payments when in fact she was not. This letter also falsely implied that White could only refinance her mortgage loan with the approval of Fannie Mae.

32. On or about January 16, 2014, PNC informed White through a Notice of Credit Review that her according to her TransUnion credit report certain derogatory or collections events, which were recent, negatively impacted her credit score. At the time of this report the only negative or derogatory language on White's report was the knowingly false and misleading information provided by Green Tree.

33.     In January 2014 White received her 1098 Mortgage Interest Statement from Green Tree.  In this statement Green Tree did not disclose to the Internal Revenue Service or to White the actual true sum of mortgage interest it received from White in 2013. As a result of Green Tree's understated sum reported to the IRS and White, White has been damaged by having to incur unexpected costs and expenses related to her tax returns and the conflicting and true information.

34.     Despite that fact that White was current on her mortgage account, Green Tree knowingly and willfully reported White on or before January 25, 2014 as "past due" on her mortgage account to each of the three major credit reporting agencies (i.e. Experian, Equifax, and Transunion) and upon information and belief to others.  Green Tree knew other creditors and potential creditors rely on truthful disclosures and reporting to the credit reporting agencies but willfully reported false information instead.

35.     In a good faith attempt to inquire as to why Green Tree was in error as to the status of her mortgage loan and in reasonable reliance that Green Tree would comply with its statutory and regulatory duties to correct its knowing and wilful errors, White incurred costs (postage and limited legal fees totaling $375) and wrote to Green Tree on or about January 27, 2014 for three specific purposes permitted under the law:

        a.  Pursuant to the Fair Credit Reporting Act, White informed the three major credit bureaus (and copied Green Tree on each letter) that she disputed negative credit reporting by Green Tree that showed her late on her mortgage).  She requested the bureaus and Green Tree to correct the false reporting;

b. Pursuant to the Maryland Consumer Protection Act, White informed Green Tree of some of her loses and damages sustained as a result of Green Tree's false reporting and improper demands for sums not contractually due by her and requested a full accounting of her loan and Green Tree's processing of her payments; and

c. Pursuant to the Real Estate Settlement Procedures Act and 12 CFR Section 1024.35 of Regulation X, White requested an accounting of her loan and explanation as to errors made by Green Tree and if Green Tree claimed it made no errors a statement of reasons why it made such a determination. In this letter White also explained that she was forced to write to Green Tree because whenever she called, Green Tree would simply hang up on her.

36. As a direct and proximate result of Green Tree's false and misleading credit reporting of White's status on her mortgage loan, PNC ultimately denied White for final approval of her loan application on January 28, 2014. In its Statement of Credit Denial, PNC explained that certain of the key facts that affected White's credit score and related to PNC's adverse decision was certain derogatory information on White's credit reports that affected her credit scores.

37. Upon information and belief the only derogatory information affecting White's credit scores as a basis of PNC's January 28, 2014 Statement of Credit Denial was the knowingly false and misleading reporting by Green Tree. This belief is based

upon the fact that there was no other negative reporting on White's scores at the time on any of White's credit reports.

38.     On February 7, 2014, Green Tree sent White a letter acknowledging that it had received her Qualified Written Request under RESPA (referenced in ¶ 35). Green Tree represented to White in this acknowledgement letter that:

> "We are in the process of retrieving and reviewing the account and servicing files and other information on the subject matter in order to fully investigate your inquiry. Once all the relevant documentation has been discussed with any relevant Green Tree personnel involved, we will provide you with a written response. You can expect to receive the written response within (30) business days from the date we received your correspondence.

39.     On February 9, 2014, Green Tree sent White a statement which falsely indicated that she was in default and past due on her mortgage loan. The February 9, 2014 statement also knowingly and willfully omitted the fact that it had received, prior to that date, two payments from White for her January and February 2014 monthly mortgage payments. The statement also included late fees and other charges which were not lawfully due since White was current on her mortgage loan and had not missed any payments.

40.     On February 20, 2014, Green Tree sent White its response to her Qualified Written Request under RESPA (referenced in ¶ 35). Green Tree represented and admitted to White in this response to the QWR (which it intended White to rely upon and she did):

     a. The servicing of her loan was transferred to it from Bank of America, NA to it on June 1, 2014 and "[t]he loan was next due for the July 1, 2013 due date when it was transferred to Green Tree."

41. Green Tree's February 20, 2014 RESPA response letter also made the following knowingly false and wilful or otherwise unfair and deceptive misleading statements and omissions:

     a. It took White's "concerns very seriously."

     b. It responded by answering areas of inquiry that White had not even inquired about (i.e. (i) origination issues and liability and (ii) an incomprehensible statement on the loan's purported 'actuarial interest' feature).

     c. It claimed White was past due on the loan when she was not.

     d. It claimed White owed late fees on the loan when she did not.

     e. It did not give White the benefit of each payment she had made to Green Tree and that Green Tree had accepted on her behalf.

     f. On the Green Tree Account History attached to the response, Green Tree did not account whatsoever or credit White for the November and December 2013 and the January and February 2014 payments she made.

42. On February 24, 2014, Green Tree acknowledged receipt of White's FCRA dispute letters to the credit reporting bureaus (referenced in ¶35). However, in this acknowledgement letter Green Tree knowingly, wilfully and falsely stated that it "makes every effort to ensure information reported to the credit agencies is current and accurate."

Green Tree intended White to rely upon this (false) statement and she did in fact do so anticipating Green Tree would correct its errors.

43.    On February 27, 2014, Green Tree acknowledged receipt of White's MCPA inquiry letter (referenced in ¶35) on or about February 4, 2014. In this letter, Green Tree stated:

> "We are in the process of retrieving and reviewing the loan and servicing files on the subject matter in order to fully investigate your inquiry. Once all the relevant documentation has been reviewed and the matter has been discussed with any relevant Green Tree personnel involved, we will provide you with a written response. You can expect to receive the written response within sixty (60) business days from the date we received your correspondence."

44.    Despite that fact that White was current on her mortgage account and she had notified Green Tree of its several errors discussed supra, Green Tree knowingly and willfully reported White on or before February 24, 2014 as "past due" on her mortgage account to Experian and upon information and belief to others. Further, despite the fact that its own records produced to her identified certain payments timely received, it knowingly and willfully furnished misrepresentations and misstatements to Experian that she had not made the same payments (i.e. July 2013 through October 2013). Green Tree also omitted to Experian certain other payments it had received but failed to credit White as having timely made on her account (i.e. November 2013 through January 2014).

45.    On or about March 6, 2014, Green Tree sent White another pay-off statement (which she had not requested) intending that White would rely upon it. Green Tree's March 6, 2014 payoff statement contained the following knowing and willful misstatements and misrepresentations:

    a.  The statement falsely claimed that White owed a sum more than the original balance of the loan when in fact White was current and owed nothing more than the then principal balance of $303,246.54;

    b.  The statement falsely claimed that White owed $8,502.50 in interest on the loan when in fact she was current and owed no interest; and

    c.  The statement falsely stated that White owed late fees when in fact she had never been late on any payment to Green Tree.

46.    The statement falsely claimed that White owed late fees in the sum of $154.78 when in fact White was and had been current on her mortgage loan throughout the period of time Green Tree had serviced her loan and in fact White owed nothing more than the original balance of the loan

47.    At all times since learning of the true facts, White has acted reasonably and in good faith in pursuing each of her claims established herein.  As discussed herein White had no reason to know of the true illegal nature of Green Tree's practices, which were unsafe and unsound lending practices until PNC raised concerns regarding her refinance and she realized that despite her good faith notice to Green Tree that it would not correct its errors. Further, it was not until the attempted refinance with PNC that White realized Green Tree was falsely reporting information about her to the credit reporting agencies and failing to timely and correctly give her credit for her on-time payments.  White attempted to call Green Tree but it elected to not talk to her. These call attempts by White to Green Tree occurred on November 8, 2013 and December 10, 2013.

**E. DAMAGES AND LOSSES FOR WHITE**

48.     The material omissions, misrepresentations, and false statements of Green Tree concerning the matters described above have caused actual damages to White, and these damages and losses, detailed herein, are:

a.   White's economic damages including but not limited to (i) the sums she paid to prepare for her refinance which was not complete (¶ 24), (ii) the difference in interest savings she would have been obligated to pay under her mortgage notes (¶¶ 26, 29); (iii) the costs for her to try to mitigate her damages and losses through communications to Green Tree (¶ 35); and (iv) the improper, unfair and deceptive assessment of late fees, interest, and costs to her mortgage account which are not contractually due (¶¶ 3, 5, 30, 33, 39, 45);

b.   White's noneconomic damages include but are not limited to (i) damage to her credit by Green Tree's false and misleading credit reporting to the credit reporting bureaus which has also affected her emotional well-being (¶¶ 3, 28, 34, 36-37, 44) and (ii) emotional damages with physical manifestations (¶ 5); and

c.   White is also entitled to statutory damages under various statutory claims pled.

**COUNT I**
**VIOLATION MARYLAND'S CONSUMER PROTECTION ACT,**
**Md. Code Ann., Com. Law §13-101 et seq.**
**&**
**MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA")**
**Md. Code Ann., Com. Law § 14-201**

49.   Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

50.   The mortgage loan servicing and described herein related to Green Tree, as set forth herein, are governed by the Consumer Protection Act, Md. Code Ann., Com. Law. § 13-101, *et seq.*

51.   Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and mortgage servicing of the mortgage loan provided by Green Tree directly and indirectly through its authorized agents an employees and the threatened foreclosure involves both the extension of credit and the collection of debts.

52.   The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following:

> (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

Md. Code Ann., Com. Law § 13-301(1) and (3)

53.   Green Tree made materially false, misleading oral or written statements, omissions, or other representations related to the status of White's mortgage loan which had the capacity, tendency, or effect of deceiving or misleading White in violation of Md. Code Ann., Com. Law § 13-301(1) including those described supra at ¶¶ 28, 30, 31, 33, 34, 39, 41, 42, 44-47.

54.   Green Tree failed to state material facts directly and indirectly through authorized agents and employees, concerning or related to the true status of White's loan

and credit of her timely payments made including those described supra at ¶¶ 34, 38, 40-44.

55.     Green Tree's deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from White and others with the intent that each rely upon the same and which White did in fact rely upon as described supra at ¶¶ 22, 23, 35, violated Md. Code Ann., Com. Law § 13-301(9).

56.     White reasonably relied upon the material acts and actions of the Green Tree as exemplified by ¶¶22, 23, 35.

57.     Had Green Tree not acted unfairly and deceptively, White would have been approved for the PNC refinance loan and would not have suffered any injury or loss described herein at ¶¶ 24, 26, 29, 35, 37, 45, 48.

58.     White has pled sufficient facts to put Green Tree on notice as to the claims against it as exemplified by ¶¶ 28, 30, 31, 33, 34, 39, 41, 42, 44-47 (i.e. dates of key acts and representations of the Green Tree), and ¶¶ 14-16 (i.e. the regulatory and statutory duties of Green Tree which were simply ignored and thereby infected the subject transaction to ensure its failure).

59.     A violation of the MCDCA is also a violation of the MCPA. Md. Code Ann., Com. Law § 13-301(14)(iii).

60.     The MCDCA prohibits "[i]n collecting or attempting to collect an alleged debt" by a collector such as Green Tree any "[c]claim, attempt, or threat[] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8).

61.    Green Tree claimed certain sums due from White that it knew were not in fact due and owing as described in ¶¶ 28, 30, 31, 33, 34, 39, 41, 42, 44-47.  At all times relevant herein White was current on her mortgage obligation and there was no basis whatsoever for Green Tree to threaten White with declaring her in default or negative credit reporting.

62.    Green Tree's conduct and omissions, as set forth above, had the capacity, tendency or effect of deceiving and misleading White, who has suffered economic and non-economic damages (including emotional distress, damage to credit and mental anguish).  These damages are also more fully described in ¶¶ 24, 26, 29, 35, 37, 45, 48.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of White and against Green Tree for actual damages and losses (including economic and non-economic) of not less than $250,000; costs and attorney's fees incurred by White; and grant White such other and further relief as this court finds necessary and proper.

### COUNT II
### VIOLATION OF THE MARYLAND MORTGAGE FRAUD PROTECTION ACT, Md. Code Ann., Real Prop. §§ 7-401, *et seq.*

63.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

64.    The Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401, et. seq., governs the relationship between Defendant and Plaintiff.

65.    Md. Code Ann., Real Prop. § 7-401(c) provides: "Homeowner" means a record owner of residential real property. The Plaintiff is record owner of the residential property in question and is therefore a Homeowner.

20

66.    Md. Code Ann., Real Prop. § 7-401(e) provides: "Mortgage lending process... include[s] [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan."

67.    Md. Ann. Code, Fin. Inst. § 11-501(l) provides: "'Mortgage loan' means any loan or other extension of credit that is: (i) secured, in whole or in part, by an interest in residential real property in Maryland; and (ii) for personal household or family purposes, in any amount."

68.    The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like White from mortgage companies and so-called professionals like Defendant Green Tree to ensure a level, fair playing field between all borrowers and professionals.

69.    The Plaintiff is a homeowner in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of her residential mortgage loan with Defendant Green Tree.

70.    Md. Code Ann., Real Prop. § 7-401(d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;
2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item (1), (2), or (3) of this section...

71. Green Tree's knowing conduct and intention to defraud White is demonstrated by its: bad faith as exemplified in ¶ 28, 30, 31, 33, 34, 39, 41, 42, 44-47; dishonest statements exemplified in ¶ 28, 30, 31, 33, 34, 39, 41, 42, 44-47; reckless indifference exemplified in ¶¶ 34, 38, 40-44; deliberate disregard of the consequences exemplified in ¶¶ 34, 38, 40-44; and willful refusal to know the true facts as exemplified in ¶¶ 34, 38, 40-44;.

72. Green Tree has committed Mortgage Fraud by knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions (¶¶ 28, 30, 31, 33, 34, 39, 41, 42, 44-47) during the mortgage lending process (directly and indirectly), with the intent that the misstatements, misrepresentations and omissions be relied on by the Plaintiff in the following manner:

   a. Green Tree withheld the truth from White and those acting on her behalf because disclosure of the truth would have likely caused Green Tree to lose the profitable servicing rights and profit it would collect on White's mortgage loan.

   b. Green Tree's failure to comply with its statutory (¶ 15) and contractual duties (¶¶ 14, 16) and omissions of the true facts (¶¶34, 38, 40-44;.) to White and those acting on her behalf prevented White from obtaining the

22

benefit of the bargain the mortgage servicing of her loan and PNC refinance (¶¶ 24-28).

73. As a result of Green Tree's knowingly deceptive and untrue communications and misstatements and omissions (¶¶28, 30, 31, 33, 34, 39, 41, 42, 44-47), Plaintiff has suffered economic and noneconomic damages and incurred court costs and attorney's fees (¶¶ 24, 26, 29, 35, 37, 45, 48).

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and against Defendant for: actual damages of not less than $250,000; treble damages against the Defendant pursuant to Md. Code Ann., Real Prop. § 7-406(c), costs and attorney's fees incurred by Plaintiff; and grant Plaintiff such other and further relief as this court finds necessary and proper.

Respectfully Submitted,

Phillip R. Robinson
Jesse Iliff
Consumer Law Center LLC
8737 Colesville Road, Suite 307
Silver Spring, MD 20910
Phone:    (410) 645-7122
          (301) 637-6270
Email: phillip@marylandconsumer.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all claims and disputed facts herein.

Phillip Robinson

Consumer Law Center LLC
8737 Colesville Rd.
Silver Spring, MD 20910



**CERTIFIED MAIL**

7012 2210 0001 0375 0263



U.S. POSTAGE
$2.00
20910
Date of sale
07/15/14
06   2S00
08336960
APC

U.S. POSTAGE
$5.60
20910
Date of sale
07/15/14
06   2S00
08336960
APC

U.S. POSTAGE
$5.60
20910
Date of sale
07/15/14
06   2S00
08336960
APC

Green Tree Servicing, LLC
President Agent,
The Corporation Trust Incorporated
351 West Camden St.
Baltimore, MD 21201