IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARCELINE WHITE, | * | |
| Plaintiff, | * | Civil Action No. RDB-14-3295 |
| v. | * | |
| GREEN TREE SERVICING, LLC, | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

This action arises out of alleged violations of the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681, *et seq.*, and other state law claims relating to Plaintiff Marceline

White's ("Plaintiff" or "White") residential mortgage.  Currently pending before this Court

are Defendant Green Tree Servicing, LLC's ("Defendant" or "Green Tree") Motion to

Dismiss White's original Complaint (ECF No. 4); Defendant's Motion to Dismiss Counts I,

II, IV and VI, in part, of Plaintiff's Second Amended Complaint (ECF No. 16); and

Plaintiff's Motion for Leave to Present the Court with Supplemental Authorities (ECF No.

22).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local

Rule 105.6 (D. Md. 2014).  For the reasons that follow, Green Tree's Motion to Dismiss

(ECF No. 4) is DENIED AS MOOT.  Defendant's Motion to Dismiss Counts I, II, IV and

VI of the Second Amended Complaint (ECF No. 16) is GRANTED IN PART and

DENIED IN PART; specifically, it is granted with respect to Counts I, II, and VI, in part,

due to preemption under the Fair Credit Reporting Act, but is denied with respect to White's

specific claim under the Act set forth in Count IV.  Plaintiff's Motion for Leave to Present

the Court with Supplemental Authorities (ECF No. 22) is considered WITHDRAWN.[1]

BACKGROUND

In a ruling on a motion to dismiss, this Court accepts the facts alleged in the

plaintiff's complaint as true.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  On

November 14, 2001, White acquired the residence at 1531 Park Avenue in Baltimore City,

Maryland ("the Property") with her former husband.  Second Am. Compl. ¶ 17.  White

became the sole owner of the Property when the couple divorced in 2007.  *Id.*  On June 1,

2013, the servicing rights for White's loan were transferred from Bank of America, North

America, to Green Tree.[2]  *Id.* ¶ 19.  White alleges that she made every payment in full and on

time from June 1, 2013 through June 2014 using online banking services provided by her

bank, PNC Bank of North America ("PNC").  *Id.* ¶ 19, 23.

In October 2013, White attempted to refinance her mortgage through PNC so that

she could obtain a lower mortgage rate.  *Id.* ¶ 24.  PNC initially approved White for a thirty-

year fixed mortgage at a rate of 4.75%, lowering her monthly payments to $1,304.12 from

over $2,000 per month.  *Id.* 25.  PNC memorialized these terms in a commitment letter in

October, 2013 indicating that they were subject to White resolving disputes unrelated to this

action on her credit report.  *Id.* ¶ 27.  White fulfilled the conditions, and was ready to settle

on the refinance in January, 2014.  *Id.*

---

[1] Plaintiff's Motion for Leave to Present the Court with Supplemental Authorities seeks to add two additional cases that address issues raised in Plaintiff's Second Amended Complaint.  Plaintiff acknowledges that the two cases are non-binding, stating "[i]f the Court feels the Supplemental Motion and such correspondence are not helpful, White withdraws the Supplemental Motion."  ECF No. 25 ¶ 2-5.  This Court finds the supplemental material duplicative and no more helpful than Plaintiff's previously cited authority; accordingly, this Court considers them withdrawn.
[2] Until this time, Bank of America was the servicer of the loan.  *Id.* at ¶ 10.  According to the Second Amended Complaint, Bank of America reported that White was current on her mortgage through April 2013.  *Id.* at ¶ 20.

Days before the proposed settlement date of January 29, 2014, PNC informed White that it could no longer approve her refinance because Green Tree, her mortgage servicer, reported to PNC that she was no longer current on her mortgage payments. *Id.* ¶ 28. White proceeded to request a payoff statement from Green Tree so that she could settle with PNC for her refinanced mortgage. *Id.* ¶ 30. The statement that Green Tree provided White indicated that White owed $6,751.11 in interest on her loan, as well as $154.78 in late fees. *Id.* Shortly thereafter, PNC informed White that according to her TransUnion credit report, she had recent derogatory collections events, which White attributes to the reporting from Green Tree that she was behind on her payments. *Id.* ¶ 32. Around this time, Green Tree passed on the same information to the three major credit reporting agencies (Experian, Equifax, and Transunion). *Id.* ¶¶ 33-34.

On January 27, 2014, White wrote to the three reporting agencies regarding the disputed information, copying Green Tree on each letter. *Id.* ¶ 35. Pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, White notified the reporting agencies and Green Tree that she disputed the negative credit reporting by Green Tree reflecting her as late on her mortgage.[3] *Id.* Pursuant to the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, White alleged that she had sustained losses as a result of Green Tree wrongfully reporting that she was not current on her mortgage, and requested a "full accounting of her loan and Green Tree's processing of

---

[3] Although the provision is unspecified by the Second Amended Complaint, Section 1681s-2(a)(3) of the Fair Credit Reporting Act creates a duty for a furnisher of credit information to notify any credit reporting agency that the furnisher is reporting to that the information is disputed. 15 U.S.C.A. § 1681s-2.

her payments . . ."[4]  *Id.*  Pursuant to the Real Estate Settlement Procedures Act ("RESPA"),

12 U.S.C.A. § 2605, 12 C.F.R. § 1024.35, White requested an accounting of her loan

information from Green Tree.[5]  *Id.*  On January 28, 2014, PNC denied White for final

approval of her refinanced mortgage, indicating that its decision was affected by negative

information on her credit reports.  *Id.* ¶ 36.

In a February 20, 2014 letter Green Tree responded to White's RESPA claims,

maintaining that White was behind on her payments.  *Id.*  In a February 24, 2014 letter

Green Tree acknowledged receipt of White's FCRA claims, indicating it would investigate

the disputed payment information.  *Id.* ¶ 42.  In a February 27, 2014 letter Green Tree

acknowledged receipt of White's MCPA inquiry, promising an investigation into her

Consumer Protection Act claims.  *Id.* ¶ 43.  Green Tree then sent another statement on

March 6, 2014 indicating that White had fallen farther behind on her payments and had

incurred additional late fees.  *Id.* ¶ 45.

White contends that Green Tree failed to investigate or correct the payment

information, and that she suffered economic damages as a result.  On June 17, 2014, White

filed a three-count complaint in the Circuit Court for Baltimore City, alleging violations of

the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et

seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law

§ 14-201, and the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann.,

Real Prop. §§ 7-401, *et seq.*  *See* Notice of Removal, ECF No. 1.  In response, Green Tree

[4] Although the provision is unspecified by the Second Amended Complaint, Section 13-301 of Maryland's
Consumer Protection Act creates a cause of action for making false or misleading statements which have the
capacity to deceive or mislead consumers.  Md. Code Ann., Com. Law § 13-301.
[5] Section 1024.35 of the Real Estate Settlement Procedures Act (Regulation X) creates a duty for banks to respond
to written notice from a borrower that asserts an error.  12 C.F.R. § 1024.35.

moved to dismiss on September 19, 2014, arguing that White's Complaint was preempted by the FCRA.  *Id.*  Plaintiff then filed an amended complaint on October 1, 2014 in the Circuit Court for Baltimore City, alleging identical state law claims but adding the RESPA and FCRA claims. *Id.*  Defendant filed a Notice of Removal in this Court pursuant to 28 U.S.C. § 1331 for federal question jurisdiction on October 21, 2014.  *Id.*

On October 22, 2014, White filed a six-count Second Amended Complaint mirroring the amended complaint she filed in Baltimore City Circuit Court.[6]  Second Am. Compl. ¶¶ 49-107.  White argues that she suffered economic losses resulting from her inability to refinance her mortgage and demands $250,000 in compensatory and punitive damages.  *Id.* ¶ 107.  In its Motion to Dismiss, Green Tree responds that Counts I and II are preempted by the FCRA and therefore should be dismissed.  *See* Mot. to Dismiss, 3.  Green Tree further argues White's FCRA claim, Count IV, should be dismissed because White has failed to state a claim on which relief can be granted.  *Id.*  Defendant then asserts that Count VI should be dismissed "to the extent the claim arises from Green Tree's alleged negligence rather than its alleged 'malice or willful intent to injure.'"  *Id.*  Defendant's motion does not address Counts III and V.[7]  *Id.*

---

[6] Green Tree's original Motion to Dismiss was mooted by White's Second Amended Complaint.  Accordingly, Green Tree's original Motion to Dismiss (ECF No. 4) will be denied as moot.

[7] In Counts III and V, White alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.35, for failing to conduct a timely investigation into the Qualified Written Response ("QWR") submitted by White in protest of Green Tree's allegedly flawed reporting (Count III); and for tortious interference with an economic relationship for "intentionally, willfully, and improperly" attempting to interfere with White's contract with Fannie Mae, *Id.* ¶ 97, (Count V).  Green Tree, in its Motion to Dismiss, stipulates that it is not filing an answer to Counts III and V of the Second Amended Complaint because "the service of a motion under Rule 12 of the Federal Rules of Civil Procedure suspends Green Tree's time to file a responsive pleading until ten (10) days after the Court's disposition of the motion."  *See* Motion to Dismiss, 1.  In its reply to Plaintiff's Memorandum in Opposition to the Motion to Dismiss, Defendant intimates that these claims survive the Motion to Dismiss, explaining Plaintiff will "still have the opportunity to pursue her claims against Green Tree for alleged violations of RESPA, tortious interference, and defamation with malice."  *See* Reply in Support of Defendant's Motion to Dismiss.

<u>STANDARD OF REVIEW</u>

**I.      Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.   First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012).  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief."  *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, --- F.3d ---, 2015

WL 1088931, *11-12 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*).

ANALYSIS

**I.    Preemption under the Fair Credit Reporting Act**

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, is "a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010). The FCRA creates a duty for furnishers of credit information to provide accurate information, including a duty to correct inaccuracies and to investigate disputed information upon notice from a credit reporting agency. 15 U.S.C.A. § 1681s-2.

Congress amended the FCRA in 1996 to address the disparity in reporting laws emerging among states that had, until then, been permitted to pass their own regulations to supplement the FCRA. *Ross*, 625 F.3d at 812. To avoid this patchwork result, the amended FCRA included a preemption provision which states in part:

> No requirement or prohibition may be imposed *under the laws of any State* (1) with respect to any subject matter regulated under . . . Section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies....

15 U.S.C. 1681t(b)(1)(F) (emphasis added).

Section 1681h(e)—a preemption provision in the original FCRA—allows for certain state common law claims under the FCRA. Section 1681h(e) states:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a

7

consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e)(emphasis added).

On its face, the broad preemption of Section 1681t appears to conflict with the malice-exception in Section 1681h(e).  To reconcile these provisions, district courts, including this Court, have adopted the "statutory approach," which applies Section 1681t for state statutory claims, and applies Section 1681h for state common law claims.  *See, e.g., Jacobs v. Seterus, Inc.,* Civ. A. No. ELH-13-02578, 2013 WL 4852243, at *4 (D. Md. Sept. 9, 2013) (adopting the "statutory approach," holding that section 1681t(b) pre-empts state statutory claims, but not state common law claims); *see also Davenport v. Sallie Mae, Inc.,* Civ. A. No. PJM-12-1475, 2013 WL 4010983, at *5 (D. Md. Aug. 2, 2013) (also adopting the state statutory approach).  Under the statutory approach, as consistently applied by this Court in the recent opinions of Judge Hollander and Judge Messitte, state statutory claims arising from reporting inaccurate information to credit reporting agencies are "squarely preempted by the plain language of the FCRA."  *Ross*, 625 F.3d at 813.

### a.  Claims I and II are State Statutory Claims and are Preempted Under the Fair Credit Reporting Act

In Count I of the Second Amended Complaint, White alleges violations of Maryland's Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.,* and Maryland's Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201, as a result of Green Tree making "materially false, misleading oral or written statements, omissions, or other representations related to the status of White's mortgage loan . . ."  Second Am. Compl. ¶¶ 49-73.  In Count II, White alleges violations of the

Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401, *et seq.*, as a result of Green Tree "knowingly making . . . deliberate misstatements, misrepresentations and omissions . . . during the mortgage lending process . . ." *Id.* ¶ 72. Because Counts I and II constitute claims arising under Maryland statutes and relate to Green Tree's furnishing of credit information to credit reporting agencies, they run "into the teeth of the FCRA preemption provision," as noted by the Fourth Circuit in *Ross.* 625 F.3d at 813. Accordingly, Counts I and II of the Second Amended Complaint are preempted by the FCRA, and will be dismissed.

### b. Claim VI, to the Extent it States a Claim Based on Negligence, Does Not Fall Within the 1681h(e) Exception

In Count VI, for defamation, White alleges that Green Tree is liable for making "a series of false and misleading statements" by claiming that White was late on her mortgage payments. *See* Compl. ¶ 101. White argues that Count VI survives the preemption provision through the exception in Section 1681h(e) permitting state common law causes of action for "false information furnished with malice or willful intent to injure such consumer." 15 U.S.C.A. § 1681h(e).

Green Tree's Motion makes clear, however, that it only seeks to dismiss Count VI to the extent that the defamation claim is premised upon a theory of negligence. Indeed, Green Tree's Motion explicitly states that it does not challenge the sufficiency of White's allegations regarding "alleged defamatory statements with the intent to injure Plaintiff." *See* Mot. to Dismiss, 15. Thus, White's reliance on 1681h(e) is misplaced because that preemption exception only extends to claims premised on "malice or willful intent to injure," while Green Tree's Motion only extends to claims arising in negligence. Therefore, Green Tree's

Motion to Dismiss Count VI in part is granted only with respect to any defamation claim arising from negligence.

## II.     White's Fair Credit Reporting Act Claim

In Count IV, White alleges that Green Tree violated Section 1681s-2(b) of the FCRA by failing to investigate allegedly false information on White's credit history for several months after Green Tree was informed of the disputed information. *Id.* ¶¶ 87-88.  Section 1681s-2(b) imposes a duty on furnishers of credit information to investigate disputed information "after receiving notice pursuant to section 1681i(a)(2)."   In turn, Section 1681i(a)(2) requires a credit reporting agency to report disputed information to a furnisher. 15 U.S.C.A. § 1681i.

Through a narrow interpretation of these two provisions, Green Tree argues that the duty to conduct an investigation into disputed information pursuant to Section 1681s-2(b) is therefore only triggered *after* receiving a report from a "credit reporting agency."  Green Tree asserts that "[b]ecause Plaintiff does not allege Green Tree ever received such a report, Plaintiff's claim under the FCRA fails as a matter of law."  *See* Pl.'s Mot. to Dismiss, 19. White contends, however, that because the FCRA imposes a duty on a credit reporting agency to notify a furnisher once the consumer disputes credit information, White can satisfy her pleading requirements by merely alleging that she raised her dispute with the reporting agencies.   She concludes that she should not have to allege that the reporting agency actually notified the furnisher to state a claim on which relief can be granted.

In arguing that a plaintiff must explicitly allege that a furnisher received a report from a credit reporting agency before they can state a claim on which relief may be granted, Green

Tree relies heavily on *Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013).[8]   Indeed, in its unpublished opinion, the Fourth Circuit Court of Appeals stated that "a furnisher's duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency." 539 F. App'x at 208 (citing *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003) ("[A] furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency").

Green Tree's reliance on *Mavilla*, however, is misplaced.   In *Mavilla*, two plaintiffs filed suit against a collection agency for reporting unpaid debts relating to health services which the plaintiffs never actually received.   539 F. App'x at 204.   One week before filing their suit against the collection agency, the plaintiffs notified their credit reporting agency that they disputed the negative reporting from the defendant.   *Id.*   The credit reporting agency immediately notified the collection agency of the dispute, triggering the duty to investigate within thirty days under the FCRA.   *Id.*   Because the plaintiffs filed their lawsuit only five days after notifying the reporting agency, the Fourth Circuit ruled that as a matter of law, the collection agency could not have been in violation of the FCRA at the time the plaintiffs filed suit.   *Id.* at 208.   That the reporting agency had informed the defendant was undisputed.   The issue in this case—whether White's allegation that she notified the credit reporting agency of disputed information was sufficient to state a claim under Section 1681s-2(b)—was therefore unaddressed.

---

[8] Unpublished opinions are not binding precedent in the Fourth Circuit.  *See* CTA4 Rule 32.1.  Nevertheless, for the reasons set forth *infra*, that case is distinguishable from this case.

At the same time, the U.S. Courts of Appeal for the Seventh and Ninth Circuits as well as a number of federal district courts have spoken directly on this issue. Those decisions illustrate that, for purposes of an FCRA lawsuit, a plaintiff triggers the defendant-furnisher's duty to investigate under 1681s-2(b) by merely notifying their credit reporting agency of a dispute. This is for two reasons: 1) the reporting agency has an obligation to notify the furnisher of the dispute, and 2) the reporting agency has no duty to inform the consumer once they have notified the furnisher. Instead, a plaintiff satisfies the 12(b)(6) standard by merely alleging that she notified her reporting agency of disputed credit information. *See, e.g., Lang v. TCF Nat. Bank,* 249 F. App'x 464, 466 (7th Cir. 2007) (unpublished) (because the FCRA does not require a credit reporting agency to inform a consumer once it notifies a furnisher of the dispute, the consumer may not be in a position to allege notification at the time they file a complaint); *see also Pace v. Bank of Am. Corp.*, 537 F. App'x 735, 736 (9th Cir. 2013) (unpublished) (at the 12(b)(6) stage, it is reasonable to infer that the credit reporting agencies obeyed the law, and that the furnisher received notice of Pace's dispute from the credit reporting agencies); S*heffer v. Experian Info. Solutions, Inc.*, 249 F. Supp. 2d 560, 563 (E.D. Pa. 2003) (the issue of whether the CRA notified the furnisher after receiving notice from a consumer is an issue appropriately resolved after discovery).

Thus, the general trend in the caselaw is that a 1681s-2(b) claim survives a motion to dismiss despite the absence of an express allegation that a credit reporting agency provided notice to a furnisher of credit information of a dispute. This conclusion is not inconsistent with the Fourth Circuit's decision in *Mavilla*. Moreover, Green Tree's other cited caselaw is

also unavailing.[9]   Those cases did not address the pleading issue presented here, and they were decided after discovery at the summary judgment stage.[10]   In the absence of any controlling Fourth Circuit authority, this Court will follow the reasoning of the Ninth and Seventh Circuit Courts of Appeals.   Specifically, this Court holds that as a matter of law, a consumer, by alleging that she informed her credit reporting agency of disputed credit information, has satisfactorily alleged that a furnisher's duty to investigate a dispute has been triggered.   Because White has alleged that she provided notice to her credit reporting agency, this Court may reasonably infer that the reporting agency complied with the FCRA and notified Green Tree of the dispute, triggering a duty to investigate under Section 1681s-2(b). Green Tree's Motion to Dismiss Count IV is therefore denied.

## CONCLUSION

For the reasons stated above, Green Tree's Motion to Dismiss (ECF No. 4) is DENIED AS MOOT.  Defendant's Motion to Dismiss Counts I, II, IV and VI of the Second Amended Complaint (ECF No. 16) is GRANTED IN PART and DENIED IN PART; specifically, it is granted with respect to Counts I, II, and VI, in part, due to preemption under the Fair Credit Reporting Act, and denied with respect to White's specific

---

[9] Green Tree's papers also cite to *Johnson v. MBNA America Bank, NA,* 357 F.3d 426 (4th Cir. 2004), and *Stafford v. Cross Country Bank,* 262 F. Supp. 2d 776 (W.D. Ky. 2003).  In *Johnson,* the Fourth Circuit addressed the meaning of "investigation" in Section 1681s-2(b).  357 F.3d at 431.  The Court ruled in favor of a consumer, upholding a more stringent interpretation of the degree of investigation required.  In *Stafford,* the District Court did not actually dismiss the FCRA claims, but merely held that based on the available record, it did not appear that the furnisher-defendant had received notice from a consumer reporting agency.  262 F. Supp. 2d at 784.

[10] This Court recognizes one district court case which applies *Marilla* to grant dismissal at the pre-discovery phase. *See Bailey v. Bank of Am. Corp.,* No. 3:14-CV-1849-TLW, 2015 WL 2240519, at *7 (D.S.C. May 11, 2015) (duties only arise under Section 1681s-2(b) after the furnisher's receives notice from a credit reporting agency that information has been disputed).  This case is distinguishable: unlike White, the Bailey's complaint never alleges notifying their credit reporting agency of the disputed information.

claim under the Act as set forth in Count IV.[11]  Plaintiff's Motion for Leave to Present the

Court with Supplemental Authorities (ECF No. 22) is considered WITHDRAWN.

A separate Order follows.


Dated:          August 4, 2015                    _____/s/_____

                                                  Richard D. Bennett
                                                  United States District Judge

---

[11] Accordingly, this case will proceed as a four-count Complaint consisting of the claims set forth in Counts III, IV, and V, as well as Count VI to the extent that the defamation claim is premised on false statements and not negligence.